1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRUCE EDWARD ELLIS II,

11        Plaintiff,                    No. 2:11-cv-00922-KJN

12        v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
          Defendant.                    <u>ORDER</u>
15
     _____/
16

17        Plaintiff, who is represented by counsel, seeks judicial review of a final decision

18   of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

19   Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his

20   motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") erred

21   by: (1) crediting the opinion of the non-examining physician over the opinions of the

22   Commissioner's examining physician and plaintiff's treating physician; (2) improperly

23   evaluating plaintiff's obesity under the standards set out in Social Security Ruling 02-1p; and (3)

24   failing to obtain testimony from the vocational expert regarding whether plaintiff could perform

25

26        [1]  This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28
     U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States
     Magistrate Judge.  (Dkt. Nos. 10, 11).

1    jobs that exist in the national economy given plaintiff's impairments.  (See Dkt. No. 17 at 4-5.)

2    The Commissioner filed an opposition to plaintiff's motion, along with a motion for summary

3    judgment. (Dkt. No. 18.)  For the reasons stated below, the court denies plaintiff's motion for

4    summary judgment and grants the Commissioner's cross-motion for summary judgment.

5    I.      BACKGROUND[2]

6                Plaintiff was 55 years old at the time of the ALJ's decision denying plaintiff's

7    application for benefits and has a high school diploma with two years of college education, but

8    no college degree.  (Administrative Transcript ("AT") 33.)  His previous employment consists of

9    work as a bartender from 1996 until about 2007, and as an office worker[3] at a tax firm.  (AT

10   39-40.)  During his time as an office worker, plaintiff worked full-time for about six years, and

11   part-time for about 13 years; the last time he worked was part-time as an office worker, every

12   other day for about 2-3 hours per day.  (AT 40, 50.)  Although plaintiff last worked part-time

13   during the 2009 tax season as an office worker, he claims that he cannot work full time because

14   of his ailments.  (AT 35-36.)  Generally, plaintiff's alleged ailments are pain in his knees, neck,

15   and lower back; frequent headaches; heartburn; and hypertension.  (See AT 47-48.)

16       A.     Procedural Background

17               On February 14, 2008, plaintiff filed an application for DIB, alleging a disability

18   onset date of April 14, 2007.  (AT 65.)  The Commissioner denied plaintiff's application initially

19   on May 29, 2008, and upon reconsideration on July 8, 2008.  (AT 73-76, 78-82.)  Plaintiff filed a

20   request for hearing on August 8, 2008, and the ALJ conducted a hearing regarding plaintiff's

21

22               [2]  Because the parties are familiar with the factual background of this case, including
     plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
23   facts related to plaintiff's impairments and medical history will be addressed only insofar as they
     are relevant to the issues presented by the parties' respective motions.

24               [3]  To the extent that the undersigned uses the terms "office work" or "office worker," the
     undersigned clarifies that such references are to the various types of positions that plaintiff held
25   while working at the tax firm, specifically the positions of office manager, data entry clerk, and
     billing clerk.
26

1   claims on September 15, 2009.  (AT 27-56, 83-84.)  Plaintiff, who was represented by counsel,

2   testified at the hearing.  (AT 32-54.)  A vocational expert ("VE") also testified at the hearing.

3   (AT 54-55.)

4        In a decision dated October 28, 2009, the ALJ denied plaintiff's application.  (AT

5   65-72.)  In reliance on the VE's testimony, the ALJ determined that plaintiff could still perform

6   his past relevant work as an office manager, data entry clerk, and billing clerk.[4]  (AT 72.)  The

7   ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

8   plaintiff's request for review.  (AT 1-5.)  Plaintiff subsequently filed this action to seek judicial

9   review.

10       [4]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq.  The term "disability" is defined, in part, as an
11  "inability to engage in any substantial gainful activity" due to "any medically determinable
    physical or mental impairment which can be expected to result in death or which has lasted or
12  can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §
    423(d)(1)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
13  §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137,
    140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as
14  follows:

15           Step one:  Is the claimant engaging in substantial gainful
         activity?  If so, the claimant is found not disabled.  If not, proceed
16       to step two.
             Step two:  Does the claimant have a "severe" impairment?
17       If so, proceed to step three.  If not, then a finding of not disabled is
         appropriate.
18           Step three:  Does the claimant's impairment or combination
         of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
19       404, Subpt. P, App.1?  If so, the claimant is automatically
         determined disabled.  If not, proceed to step four.
20           Step four:  Is the claimant capable of performing his past
         work?  If so, the claimant is not disabled.  If not, proceed to step
21       five.
             Step five:  Does the claimant have the residual functional
22       capacity to perform any other work?  If so, the claimant is not
         disabled.  If not, the claimant is disabled.

23  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

24       The claimant bears the burden of proof in the first four steps of the sequential evaluation
25  process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
    evaluation process proceeds to step five.  Id.

26

B.      Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 14, 2007, the alleged onset date.  (AT 67.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairments: "lumbar and cervical degenerative disk disease and obesity."  (Id.)  At step three, the ALJ determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations.  (Id.)

The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform "medium work."  (AT 68.)  In making this RFC determination, the ALJ found that, although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," plaintiff's statements regarding the limiting effects of the alleged symptoms were "not credible to the extent that they are inconsistent with the . . . [RFC] assessment."  (Id.)  The ALJ gave "great weight" to the state agency physician's determination that plaintiff could do medium work and could "occasionally balance and kneel." (AT 69, 71.)  The ALJ also considered, but accorded "minimal weight" to, the medical opinion of the examining consultative physician, Dr. Corkill.  (AT 71.)

At step four, the ALJ found that, considering the VE's testimony, plaintiff was capable of performing his past relevant work as an office manager, data entry clerk, and billing clerk, all of which were categorized as "sedentary work" under the applicable regulations.  (AT 72.)  The ALJ concluded the analysis at step four by determining that plaintiff could perform past relevant work and did not determine whether there were other jobs in the national economy that plaintiff could perform.

II.      STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

4

1  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as

2  "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.

3  2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it

4  is such relevant evidence as a reasonable mind might accept as adequate to support a

5  conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

6  (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at

7  690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical

8  testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v.

9  Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to

10  resolving ambiguities in the medical evidence.").  Findings of fact that are supported by

11  substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d

12  1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

13  denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see

14  also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is

15  susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

16  (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must

17  consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

18  of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466

19  F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

20  2007).  "To determine whether substantial evidence supports the ALJ's decision, [a court]

21  review[s] the administrative record as a whole, weighing both the evidence that supports and that

22  which detracts from the ALJ's conclusion."  Andrews, 53 F.3d at 1039.

23  III.   DISCUSSION

24          As noted above, plaintiff alleges that the ALJ erred by: (1) crediting the opinion of

25  the non-examining state agency physician over the opinions of the consultative examining

26  physician and plaintiff's treating physician; (2) improperly evaluating plaintiff's obesity under

5

1   Social Security Ruling 02-1p; and (3) failing to obtain testimony from the vocational expert

2   regarding whether plaintiff could perform jobs that exist in the national economy given plaintiff's

3   impairments.  The court addresses each alleged error in turn.

4          A.      The ALJ's Accordance of "Great Weight" to the Non-Examining Physician's
                   Opinion
5

6                  Plaintiff first contends that the ALJ erred when he gave greater weight to the

7   opinion of the non-examining state agency physician than to the opinions of the consultative

8   examining physician and plaintiff's own treating physician.  (Dkt. No. 17 at 4.)

9                  There are three types of medical physicians from which medical opinions are

10  recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2)

11  those who examine but do not treat the claimant (examining physicians); and (3) those who

12  neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d

13  821, 830 (9th Cir. 1995).  "The ALJ must consider all medical opinion evidence."  Tommasetti,

14  533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)).  Generally, the opinion of a doctor who has

15  treated the claimant should be entitled to more weight than the opinion of a doctor who did not

16  treat the claimant, and an examining doctor's opinion is entitled to greater weight than that of a

17  non-examining doctor.  Id.

18                 Where a treating or examining physician's opinion is contradicted by another

19  doctor, the "[ALJ] must determine credibility and resolve the conflict."  Valentine, 574 F.3d at

20  692 (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002)).  "However, to reject

21  the opinion of a treating physician 'in favor of a conflicting opinion of an examining

22  physician[,]'an ALJ still must 'make[ ] findings setting forth specific, legitimate reasons for

23  doing so that are based on substantial evidence in the record.'"  Id. (quoting Thomas, 278 F.3d at

24  957).  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the

25  facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"

26  Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

1989)).  However, the ALJ cannot simply offer his conclusions, "[h]e must set forth his own

interpretations and explain why they, rather than the doctors', are correct."  Orn v. Astrue, 495

F.3d 625, 632 (9th Cir. 2007) (citing Embrey v. Brown, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Moreover, "a finding that a treating source medical opinion . . . is inconsistent with the other

substantial evidence in the case record means only that the opinion is not entitled to 'controlling

weight,' not that the opinion should be rejected."  Id. at 631-32 (quoting Social Security Ruling

("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).  "In many cases, a treating source's

medical opinion will be entitled to the greatest weight and should be adopted, even if it does not

meet the test for controlling weight."  Id. at 632.

        Additionally, if the ALJ rejects the opinion of a treating or examining physician

based in part on the testimony of a non-examining medical advisor, the reasons for doing so must

be legitimate, specific, and based on substantial evidence.  See Andrews, 53 F.3d at 1043;

Magallanes, 881 F.2d at 752-53.  "The opinion of a nonexamining physician cannot by itself

constitute substantial evidence that justifies the rejection of the opinion of either an examining

physician or a treating physician."  Lester, 81 F.3d at 831; accord Ryan, 528 F.3d at 1202.

        1.      The ALJ's Accordance of "Minimal Weight" to Dr. Corkill's Opinion

        Dr. Corkill performed an internal medicine consultative examination and

diagnosed plaintiff with obesity, cervical disk disease, and lumbar disk disease.  (AT 190.)

Based on this examination, he determined that plaintiff had the following functional limitations:

a sitting tolerance of 1.5 hours, standing tolerance of 1.5 hours, the ability to walk four blocks

before needing rest, and the ability to lift 25-30 pounds occasionally.  (Id.)  The ALJ gave

"minimal weight" to this opinion.  (AT 71.)  The ALJ provided the following reasons for

assigning this opinion lesser weight:

> With regards to Dr. Corkill's medical opinions, the undersigned gave them
> minimal weight as claimant had no joint pain, swelling, tenderness or
> inflamation.  His opinions are further eroded as the claimant is able to
> perform multiple daily activities as noted at the hearing.  Furthermore, the
> claimant indicated that he drew unemployment benefits which indicated

7

1    that he retained the ability to work.  A review of treating records failed to
     document painful fatiguing weakness.  Lastly, treating records indicated
2    that the claimant lost weight due to implementing dietary modification and
     exercising on a daily basis by walking.
3

4    (Id.)

5           The undersigned first addresses the ALJ's first stated reason for according

6    minimal weight to Dr. Corkill's opinion – that plaintiff had no joint pain, swelling, tenderness or

7    inflammation.  Dr. Corkill noted in his physical examination that plaintiff had a normal range of

8    motion in all tested joints and exhibited no "objective findings of joint pain, swelling, tenderness,

9    or inflammation." (AT 189-191.)  Dr. Corkill also noted that plaintiff had performed all physical

10   examination maneuvers "without significant difficulty," and that despite plaintiff's complaints of

11   back pain, plaintiff's back movements had full range of motion and were "at the normal

12   degrees." (AT 189.)  These notes, and Dr. Corkill's other observations regarding plaintiff's

13   physical condition, contradict Dr. Corkill's overall assessment of plaintiff's functional

14   limitations.  In acknowledging this discrepancy, the ALJ determined that Dr. Corkill's finding

15   that plaintiff exhibited "no objective findings of joint pain, swelling, tenderness or inflamation"

16   upon examination undermined Dr. Corkill's ultimate opinion that plaintiff had a "body habitus

17   and painful debilitating pain" (AT 190) that caused the physical limitations listed in his

18   functional assessment.  (AT 71.)  In essence, the ALJ discounted Dr. Corkill's functional

19   assessment because it contradicted the objective medical findings that Dr. Corkill noted in his

20   report.  Such a contradiction between a physician's functional assessment and his or her objective

21   medical findings is a legitimate reason for an ALJ to discount or reject that physician's opinion.

22   See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy between

23   a physician's observations and functional assessment is a clear and convincing reason for an ALJ

24   to reject that physician's medical opinion) (citing Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir.

25   1989)).  Accordingly, this reason for giving minimal weight to Dr. Corkill's opinion was

26   legitimate, specific, and supported by substantial evidence.

1          Next, the undersigned turns to the ALJ's determination that the treating records

2  did not document the "painful, fatiguing weakness" found in Dr. Corkill's opinion.  The ALJ

3  found that the medical and diagnostic findings in the record were more consistent with the

4  non-examining physician's physical assessment than Dr. Corkill's physical assessment.

5  "Although the contrary opinion of a non-examining medical expert does not alone constitute a

6  specific, legitimate reason for rejecting a treating or examining physician's opinion, it may

7  constitute substantial evidence when it is consistent with other independent evidence in the

8  record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing Magallanes, 881 F.2d

9  at 751).

10          Dr. Corkill examined plaintiff in May of 2008 and did not have any of plaintiff's

11  medical records to review when he conducted the examination and gave his opinion.  (AT 187.)

12  On May 28, 2008, the non-examining doctor reviewed Dr. Corkill's examination findings and

13  concluded that plaintiff could perform medium work.  (AT 192-97.)  The non-examining doctor

14  expressly stated that his functional assessment findings were in contradiction to those of Dr.

15  Corkill, that Dr. Corkill's assessment reflected "tolerance limits as stated by [plaintiff]," and that

16  Dr. Corkill's opinion was not supported by his exam findings.  (AT 197.)  The non-examining

17  doctor also noted that Dr. Corkill's exam overall showed "mild  findings" and that plaintiff had a

18  normal gait and no atrophy.  (Id.)

19          Subsequent to these assessments, plaintiff underwent examinations by other

20  treating providers.  (See AT 216-54.)  During a neurological examination conducted on April 10,

21  2009, a neurologist, Dr. Harvinder Birk, concluded that plaintiff had "right lumbosacral

22  radiculopathy[5] at the S1 level" of his spine.  (AT 217.)  In examining plaintiff, Family Nurse

23  _____

24          [5]  Radiculopathy or radicular pain "is a type of pain that radiates into the lower extremity
   directly along the course of a spinal nerve root.  Radicular pain is caused by compression,
   inflammation and/or injury to a spinal nerve root arising from common conditions including
25  herniated disc, foraminal stenosis and peridural fibrosis.  Leg pain can be accompanied by
   numbness and tingling, muscle weakness, and loss of reflexes.  The most common symptom of
26  radicular pain is usually called sciatica or sometimes radiculopathy, which is pain that radiates

9

1  Practitioner ("FNP") Dawson at the Shasta Community Health Center noted that, although

2  plaintiff showed discomfort in standing up from a sitting position, he had a normal gait and

3  experienced no pain when undergoing a straight leg test. (AT 220.)  During the course of these

4  examinations, FNP Dawson also noted that plaintiff had begun losing weight, dropping from 306

5  pounds at the outset of the series of examinations on February 5, 2009, to 279 pounds by June 17,

6  2009. (AT 220, 250.)  The most recent examination in the record by Dr. Kimberly Page showed

7  that plaintiff experienced pain with leaning tests, but that there were no abnormalities in

8  plaintiff's spine, and that plaintiff had a "mildly antalgic gait" and a "normal cervical range of

9  motion." (AT 257.)  X-rays of plaintiff's back taken in June of 2009 showed that his back had a

10  "reasonable range of motion" and that although there were "degenerative changes at the L5-S1

11  disk space," the vertebral bodies and disk space were otherwise unremarkable. (AT 224.)

12           The ALJ made his determinations based on the above-stated objective medical

13  findings; he reconciled the contradictory opinions of Dr. Corkill and the non-examining

14  physician, and determined that the non-examining physician's opinion was more consistent with

15  the clinical and diagnostic findings from plaintiff's treating sources, and thus entitled to more

16  weight.  As required, the ALJ set out a detailed and thorough summary of the facts and

17  conflicting clinical evidence (AT 69-71), stated his interpretation of the evidence, and made

18  findings regarding Dr. Corkill's assessment in light of the evidence in the record.  Under the

19  deferential standard of review, it cannot be said that the ALJ's analysis and conclusions drawn

20  from the available evidence were erroneous or unsupported by substantial evidence.

21           The undersigned next addresses the remaining reasons that the ALJ gave for

22  assigning Dr. Corkill's opinion minimal weight.  These remaining reasons are that plaintiff

23  
24  along the sciatic nerve down the back of the thigh and sometimes into the calf and foot.
    Radicular pain can be effectively treated conservatively (non-surgically) with physical therapy,
    medications and epidural injections.  If conservative treatments fail, decompressive surgery, such
25  as a laminectomy or discectomy, may alleviate radicular pain."  See *Radicular Pain and
    Radiculopathy Definition*, http://www.spine-health.com/glossary/r/radicular-pain-and-
26  radiculopathy.

1    indicated at the hearing that he could perform multiple daily activities, indicated that he "drew

2    unemployment benefits which indicated the ability to work," and lost weight through exercise

3    and dieting.  (AT 71.)  These reasons, alone, may not necessarily constitute a legitimate reason

4    for discounting Dr. Corkill's opinion.  However, the fact that plaintiff lost weight during the

5    period after he was examined by Dr. Corkill lends some credence to the ALJ's determination that

6    Dr. Corkill's opinion was contrary to the medical evidence in the record.  In Dr. Corkill's

7    opinion, plaintiff could only walk about four blocks before needing rest.  (AT 190.)  The fact that

8    plaintiff was able to lose a substantial amount of weight through walking on a daily basis after

9    Dr. Corkill's assessment indicates that plaintiff's physical capacity was beyond the limitations set

10   out in Dr. Corkill's assessment, thus bolstering the ALJ's decision to give Dr. Corkill's opinion

11   minimal weight.

12          In light of the above, the undersigned concludes that the ALJ provided specific

13   and legitimate reasons for discounting Dr. Corkill's functional assessment.

14          2.    The ALJ's Consideration of the Treating Physician's Opinion

15          Plaintiff also argues in his motion for summary judgment that the ALJ improperly

16   discounted the medical opinion of plaintiff's treating physician, although plaintiff failed to

17   identify any particular physician or the content of the purported opinion.  (Dkt. No. 17 at 4.)   In

18   his response to defendant's cross-motion for summary judgment, plaintiff alleges that the ALJ

19   gave no weight to the opinions of Dr. Birk, FNP Dawson, or Dr. Page.  (Dkt. No. 19 at 3.)

20   However, aside from the opinions of Dr. Corkill and the non-examining physician, no other

21   physician in the record provided an opinion regarding plaintiff's physical capabilities.

22          Title 20 C.F.R. § 404.1527(a)(2) defines "medical opinion" as "statements from

23   physicians and psychologists or other acceptable medical sources that reflect judgments about the

24   nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and

25   prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental

26   restrictions."  As the Commissioner points out in a footnote, the record does not contain

1   functional assessments by any of plaintiff's treating sources.  (Dkt. No. 18 at 8 n.1.)  Dr. Page

2   indicated during his examination that plaintiff's "disability status is being determined by his

3   primary treating physician, Dr. Heard."  (AT 257.)  However, there is nothing in the record

4   indicating that Dr. Heard ever performed a functional assessment.  As discussed above, the ALJ

5   examined the other medical findings in the record and found that they were in conformity with

6   the functional assessment made by the non-examining physician and largely contrary to Dr.

7   Corkill's assessment.  This conclusion was supported by substantial evidence.

8          Plaintiff has the burden of showing that the ALJ erred by not considering the

9   opinions of treating physicians.  See Burch, 400 F.3d at 679 ("The claimant carries the initial

10  burden of proving a disability in steps one through four of the analysis.").  Simply put, plaintiff

11  has not pointed to any evidence in the record demonstrating that the ALJ disregarded a medical

12  opinion given by plaintiff's treating providers.

13         B.   The ALJ's Consideration of Plaintiff's Obesity

14         Next, plaintiff argues that the ALJ failed to follow SSR[6] 02-1p, which governs the

15  consideration of a claimant's obesity.  (Dkt. No. 17 at 5.)  Additionally, he argues that the ALJ

16  derogated from the treating physician's records when finding at step four "that [the] treating

17  records did not contain evidence that [plaintiff's] obesity was causing any significant

18  musculoskeletal problems."  (Id.)  Plaintiff is correct that obesity must be considered throughout

19  the sequential evaluation process, including when determining an individual's RFC.  SSR 02-1p,

20  at **3, 6.  "The combined effects of obesity with other impairments may be greater than might be

21  expected without obesity."  SSR 02-1p, at *6.  The Ninth Circuit has held that, pursuant to SSR

22  02-1p, the ALJ must consider obesity in determining the RFC based on the information in the

23  case record.  Burch, 400 F.3d at 683.  For the reasons stated below, the undersigned finds that the

24

25  ─────────────
    [6] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and
    policy."  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not
    carry the 'force of law,' . . . they are binding on ALJs nonetheless."  Bray, 554 F.3d at 1224
26  (citation omitted).

1    ALJ properly considered plaintiff's obesity in determining plaintiff's RFC.

2                As a preliminary matter, plaintiff points to no evidence supporting his contention

3    that his obesity caused any functional limitations beyond those considered by the ALJ.  Plaintiff

4    does not indicate how the ALJ's consideration of plaintiff's obesity was contrary to SSR 02-1p or

5    the treating physician's records.  See Burch, 400 F.3d at 684 (holding that the ALJ properly

6    considered the claimant's obesity where the claimant failed to set forth any additional functional

7    limitations caused by his obesity that were not assessed by the ALJ or indicated in the record).

8    Therefore, plaintiff has not shown that the ALJ improperly considered, or failed to consider,

9    plaintiff's obesity.

10                Moreover, substantial evidence supports the ALJ's assessment of plaintiff's

11   obesity and RFC.  As stated above, the ALJ thoroughly discussed the evidence regarding

12   plaintiff's functional limitations when he determined plaintiff's RFC.  (AT 69-71.)  The ALJ

13   acknowledged that the medical record contained observations regarding plaintiff's obesity.  (AT

14   71.)  In particular, during an examination on February 5, 2009, FNP Dawson noted that plaintiff

15   was obese, weighing 306 pounds, and recommended that plaintiff lose weight.  (AT 250.)

16   During a later examination, on June 17, 2009, FNP Dawson noted that plaintiff had lost weight,

17   his weight having dropped to 279 pounds.  (AT 220.)  The ALJ incorporated this weight change

18   into his assessment, stating that the "treating records indicated the claimant had lost weight with

19   dietary modification and walking daily."  (AT 71; see also AT 70.)  Additionally, the ALJ

20   considered plaintiff's obesity as one of the severe impairments found at step two; however, the

21   ALJ also found that the fact that plaintiff had lost weight during the relevant period was one

22   reason why Dr. Corkill's more severe functional assessment should be discredited in favor of the

23   non-examining physician's assessment.  (AT 67, 71.)  The ALJ further found that the treating

24   records did not contain evidence that plaintiff' obesity was causing any significant

25   musculoskeletal problems.  (AT 71.)  Thus, the ALJ properly considered plaintiff's obesity in his

26   assessment and based his findings on substantial evidence in the record.

C.    The ALJ's Use of the VE's Testimony at Step Four

Finally, plaintiff makes three arguments regarding the ALJ's use of the VE's testimony.  First, plaintiff argues that the ALJ failed to have the VE testify as to whether plaintiff could perform other jobs in the national economy in light of his impairments.  (Dkt. No. 17 at 4.)  Second, he argues that the ALJ erred by not posing any hypotheticals to the VE supporting the ALJ's determination that plaintiff could perform past relevant work.  (Id. at 6.)  Additionally, plaintiff argues that the ALJ misstated the VE's testimony.  (Id. at 7.)  The undersigned finds all of these arguments unpersuasive.

First, plaintiff's argument that the ALJ erred by failing to have the VE testify about other jobs in the national economy lacks merit because the ALJ was not required to reach step five of the analysis.  When an ALJ determines at step four that the claimant has the RFC to perform past work, the ALJ does "not consider [the claimant's] vocational factors of age, education, and work experience or whether [the claimant's] past relevant work exists in significant numbers in the national economy" because the claimant is deemed not disabled; there is no need to go on to step five of the analysis.  20 C.F.R. § 404.1560(b)(3); 20 C.F.R. 404.1520(f); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (holding that the ALJ's determination that the claimant could perform past work made it unnecessary for the ALJ to call a vocational expert at step five).

Second, contrary to plaintiff's contention, the ALJ did not need to question the VE as to whether plaintiff could perform his past relevant work in light of the ALJ's RFC finding.  Although an ALJ may use a vocational expert at step four, it is not required.  See 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity" (emphasis added)).  Case law is in accord that at step four an ALJ's determination that a claimant can perform past work need not be supported by the testimony of a vocational expert.  See Mathews v. Shalala, 10 F.3d 678, 681

1    (9th Cir. 1993) (holding that because the claimant "failed to show that he was unable to return to

2    his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]"

3    and "[t]he vocational expert's testimony was thus useful, but not required").  The ALJ found that

4    plaintiff's RFC permitted him to "perform a full range of medium work."  (AT 72.)  As stated

5    above, this determination was based on substantial evidence.  During the hearing, the VE

6    testified that all of plaintiff's past relevant jobs were categorized as either "sedentary" or "light"

7    work under the applicable sections of the Dictionary of Occupational Titles (DOT).[7]  (AT 55.)  If

8    a person can perform "medium work," then he or she can also perform work categorized as

9    "sedentary" or "light."  20 C.F.R. § 404.1567(c) ("If someone can do medium work, we

10   determine that he or she can also do sedentary and light work.").  Because the ALJ found that

---

[7]  The DOT defines sedentary work as requiring a worker to:

> Exert[ ] up to 10 pounds of force occasionally (Occasionally: activity or
> condition exists up to 1/3 of the time) and/or a negligible amount of force
> frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the
> time) to lift, carry, push, pull, or otherwise move objects, including the
> human body. Sedentary work invoves [sic] sitting most of the time, but may
> involve walking or standing for brief periods of time. Jobs are sedentary if
> walking and standing are required only occsasionally [sic] and all other
> sedentary criteria are met.

DOT 214.362-042, 1991 WL 67176.

The DOT defines light work as requiring a worker to:

> Exert[ ] up to 20 pounds of force occasionally (Occasionally: activity or
> condition exists up to 1/3 of the time) and/or up to 10 pounds of force
> frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the
> time) and/or a negligible amount of force constantly (Constantly: activity or
> condition exists 2/3 or more of the time) to move objects. Physical demand
> requirements are in excess of those for Sedentary Work. Even though the
> weight lifted may be only a negligible amount, a job should be rated Light
> Work: (1) when it requires walking or standing to a significant degree; or
> (2) when it requires sitting most of the time but entails pushing and/or
> pulling of arm or leg controls; and/or (3) when the job requires working at a
> production rate pace entailing the constant pushing and/or pulling of
> materials even though the weight of those materials is negligible.

DOT 312.474-010, 1991 WL 672698.

1   plaintiff could perform the full range of jobs classified under "medium work" (AT 72), it

2   necessarily follows that plaintiff was also capable of performing his past relevant work, which, as

3   the VE stated in her testimony, only required "sedentary" or "light" exertion.  Accordingly, there

4   was no need for the ALJ to pose hypothetical questions to the VE to determine whether plaintiff

5   was capable of performing his past relevant work.

6           Third, plaintiff's claim that the ALJ mischaracterized the VE's testimony also

7   lacks merit.  In his decision, the ALJ stated that the "vocational expert testified that the claimant

8   could perform his past relevant work . . .."  (AT 72.)  Although the VE never actually made this

9   statement (see AT 55), the conclusion can be reasonably inferred from the VE's testimony for the

10  reasons discussed above.  Any error arising from the ALJ's misstatement does not constitute

11  reversible error because it is "nonprejudicial to the claimant" and "irrelevant to the ALJ's

12  ultimate disability conclusion."  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th

13  Cir. 2006).

14          Finally, for the first time in his reply brief, plaintiff argues that the ALJ erred at

15  step three because he allegedly failed to consider evidence that plaintiff may meet Listing 1.04A

16  (disorders of the spine).  (Dkt. No. 19 at 3.)  Plaintiff argues that, as a result, the case should be

17  remanded for a "thorough Step 3 analysis."  (Id.)  However, plaintiff failed to raise such an

18  argument in his motion for summary judgment.  Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192,

19  1202 (9th Cir. 2001) (noting that a district court has discretion to consider issues initially raised

20  in a reply brief).  Even if the court were inclined to consider the newly-raised argument, plaintiff

21  offers no actual theory or analysis, beyond a mere conclusory assertion, of how he meets or

22  equals Listing 1.04.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (explaining that the

23  claimant must at least offer a theory with some supporting evidence that his impairments equal a

24  listed impairment).  In light of these deficiencies, and because defendant has not had an

25  opportunity to respond to plaintiff's conclusory contention, the court declines to consider it.

26  ////

IV.    CONCLUSION

          For the foregoing reasons, IT IS HEREBY ORDERED that:

          1.      Plaintiff's motion for summary judgment (Dkt. No. 17) is denied.

          2.      The Commissioner's cross-motion for summary judgment (Dkt. No. 18) is granted.

          3.      The Clerk of Court is directed to enter judgment in favor of the Commissioner.

          IT IS SO ORDERED.

DATED:  September 17, 2012

                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE

17