IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE EDWARD ELLIS II,

      Plaintiff,                                  No. 2:11-cv-00922-KJN

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                               <u>ORDER</u>

_____/

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") erred by: (1) crediting the opinion of the non-examining physician over the opinions of the Commissioner's examining physician and plaintiff's treating physician; (2) improperly evaluating plaintiff's obesity under the standards set out in Social Security Ruling 02-1p; and (3) failing to obtain testimony from the vocational expert regarding whether plaintiff could perform

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 10, 11).

jobs that exist in the national economy given plaintiff's impairments. (See Dkt. No. 17 at 4-5.) The Commissioner filed an opposition to plaintiff's motion, along with a motion for summary judgment. (Dkt. No. 18.) For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I. BACKGROUND[2]

Plaintiff was 55 years old at the time of the ALJ's decision denying plaintiff's application for benefits and has a high school diploma with two years of college education, but no college degree. (Administrative Transcript ("AT") 33.) His previous employment consists of work as a bartender from 1996 until about 2007, and as an office worker[3] at a tax firm. (AT 39-40.) During his time as an office worker, plaintiff worked full-time for about six years, and part-time for about 13 years; the last time he worked was part-time as an office worker, every other day for about 2-3 hours per day. (AT 40, 50.) Although plaintiff last worked part-time during the 2009 tax season as an office worker, he claims that he cannot work full time because of his ailments. (AT 35-36.) Generally, plaintiff's alleged ailments are pain in his knees, neck, and lower back; frequent headaches; heartburn; and hypertension. (See AT 47-48.)

A. Procedural Background

On February 14, 2008, plaintiff filed an application for DIB, alleging a disability onset date of April 14, 2007. (AT 65.) The Commissioner denied plaintiff's application initially on May 29, 2008, and upon reconsideration on July 8, 2008. (AT 73-76, 78-82.) Plaintiff filed a request for hearing on August 8, 2008, and the ALJ conducted a hearing regarding plaintiff's

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant to the issues presented by the parties' respective motions.

[3] To the extent that the undersigned uses the terms "office work" or "office worker," the undersigned clarifies that such references are to the various types of positions that plaintiff held while working at the tax firm, specifically the positions of office manager, data entry clerk, and billing clerk.

2

claims on September 15, 2009. (AT 27-56, 83-84.) Plaintiff, who was represented by counsel, testified at the hearing. (AT 32-54.) A vocational expert ("VE") also testified at the hearing. (AT 54-55.)

In a decision dated October 28, 2009, the ALJ denied plaintiff's application. (AT 65-72.) In reliance on the VE's testimony, the ALJ determined that plaintiff could still perform his past relevant work as an office manager, data entry clerk, and billing clerk.[4] (AT 72.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 1-5.) Plaintiff subsequently filed this action to seek judicial review.

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. The term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

### B. Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 14, 2007, the alleged onset date. (AT 67.) At step two, the ALJ concluded that plaintiff had the following "severe" impairments: "lumbar and cervical degenerative disk disease and obesity." (Id.) At step three, the ALJ determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations. (Id.)

The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform "medium work." (AT 68.) In making this RFC determination, the ALJ found that, although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," plaintiff's statements regarding the limiting effects of the alleged symptoms were "not credible to the extent that they are inconsistent with the . . . [RFC] assessment." (Id.) The ALJ gave "great weight" to the state agency physician's determination that plaintiff could do medium work and could "occasionally balance and kneel." (AT 69, 71.) The ALJ also considered, but accorded "minimal weight" to, the medical opinion of the examining consultative physician, Dr. Corkill. (AT 71.)

At step four, the ALJ found that, considering the VE's testimony, plaintiff was capable of performing his past relevant work as an office manager, data entry clerk, and billing clerk, all of which were categorized as "sedentary work" under the applicable regulations. (AT 72.) The ALJ concluded the analysis at step four by determining that plaintiff could perform past relevant work and did not determine whether there were other jobs in the national economy that plaintiff could perform.

## II. STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v.

Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "To determine whether substantial evidence supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." Andrews, 53 F.3d at 1039.

III.   DISCUSSION

      As noted above, plaintiff alleges that the ALJ erred by: (1) crediting the opinion of the non-examining state agency physician over the opinions of the consultative examining physician and plaintiff's treating physician; (2) improperly evaluating plaintiff's obesity under

5

Social Security Ruling 02-1p; and (3) failing to obtain testimony from the vocational expert regarding whether plaintiff could perform jobs that exist in the national economy given plaintiff's impairments. The court addresses each alleged error in turn.

A. The ALJ's Accordance of "Great Weight" to the Non-Examining Physician's Opinion

Plaintiff first contends that the ALJ erred when he gave greater weight to the opinion of the non-examining state agency physician than to the opinions of the consultative examining physician and plaintiff's own treating physician. (Dkt. No. 17 at 4.)

There are three types of medical physicians from which medical opinions are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The ALJ must consider all medical opinion evidence." Tommasetti, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). Generally, the opinion of a doctor who has treated the claimant should be entitled to more weight than the opinion of a doctor who did not treat the claimant, and an examining doctor's opinion is entitled to greater weight than that of a non-examining doctor. Id.

Where a treating or examining physician's opinion is contradicted by another doctor, the "[ALJ] must determine credibility and resolve the conflict." Valentine, 574 F.3d at 692 (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002)). "However, to reject the opinion of a treating physician 'in favor of a conflicting opinion of an examining physician[,]'an ALJ still must 'make[ ] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Id. (quoting Thomas, 278 F.3d at 957). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

6

1989)).  However, the ALJ cannot simply offer his conclusions, "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Embrey v. Brown, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Moreover, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  Id. at 631-32 (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  Id. at 632.

Additionally, if the ALJ rejects the opinion of a treating or examining physician based in part on the testimony of a non-examining medical advisor, the reasons for doing so must be legitimate, specific, and based on substantial evidence.  See Andrews, 53 F.3d at 1043; Magallanes, 881 F.2d at 752-53.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester, 81 F.3d at 831; accord Ryan, 528 F.3d at 1202.

    1.  The ALJ's Accordance of "Minimal Weight" to Dr. Corkill's Opinion

Dr. Corkill performed an internal medicine consultative examination and diagnosed plaintiff with obesity, cervical disk disease, and lumbar disk disease.  (AT 190.)  Based on this examination, he determined that plaintiff had the following functional limitations: a sitting tolerance of 1.5 hours, standing tolerance of 1.5 hours, the ability to walk four blocks before needing rest, and the ability to lift 25-30 pounds occasionally.  (Id.)  The ALJ gave "minimal weight" to this opinion.  (AT 71.)  The ALJ provided the following reasons for assigning this opinion lesser weight:

> With regards to Dr. Corkill's medical opinions, the undersigned gave them minimal weight as claimant had no joint pain, swelling, tenderness or inflamation.  His opinions are further eroded as the claimant is able to perform multiple daily activities as noted at the hearing.  Furthermore, the claimant indicated that he drew unemployment benefits which indicated

7

1
2
3
>that he retained the ability to work.  A review of treating records failed to document painful fatiguing weakness.  Lastly, treating records indicated that the claimant lost weight due to implementing dietary modification and exercising on a daily basis by walking.

4  (Id.)

The undersigned first addresses the ALJ's first stated reason for according minimal weight to Dr. Corkill's opinion – that plaintiff had no joint pain, swelling, tenderness or inflammation.  Dr. Corkill noted in his physical examination that plaintiff had a normal range of motion in all tested joints and exhibited no "objective findings of joint pain, swelling, tenderness, or inflammation." (AT 189-191.)  Dr. Corkill also noted that plaintiff had performed all physical examination maneuvers "without significant difficulty," and that despite plaintiff's complaints of back pain, plaintiff's back movements had full range of motion and were "at the normal degrees." (AT 189.)  These notes, and Dr. Corkill's other observations regarding plaintiff's physical condition, contradict Dr. Corkill's overall assessment of plaintiff's functional limitations.  In acknowledging this discrepancy, the ALJ determined that Dr. Corkill's finding that plaintiff exhibited "no objective findings of joint pain, swelling, tenderness or inflamation" upon examination undermined Dr. Corkill's ultimate opinion that plaintiff had a "body habitus and painful debilitating pain" (AT 190) that caused the physical limitations listed in his functional assessment. (AT 71.)  In essence, the ALJ discounted Dr. Corkill's functional assessment because it contradicted the objective medical findings that Dr. Corkill noted in his report.  Such a contradiction between a physician's functional assessment and his or her objective medical findings is a legitimate reason for an ALJ to discount or reject that physician's opinion.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy between a physician's observations and functional assessment is a clear and convincing reason for an ALJ to reject that physician's medical opinion) (citing Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)).  Accordingly, this reason for giving minimal weight to Dr. Corkill's opinion was legitimate, specific, and supported by substantial evidence.

Next, the undersigned turns to the ALJ's determination that the treating records did not document the "painful, fatiguing weakness" found in Dr. Corkill's opinion. The ALJ found that the medical and diagnostic findings in the record were more consistent with the non-examining physician's physical assessment than Dr. Corkill's physical assessment. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing Magallanes, 881 F.2d at 751).

Dr. Corkill examined plaintiff in May of 2008 and did not have any of plaintiff's medical records to review when he conducted the examination and gave his opinion. (AT 187.) On May 28, 2008, the non-examining doctor reviewed Dr. Corkill's examination findings and concluded that plaintiff could perform medium work. (AT 192-97.) The non-examining doctor expressly stated that his functional assessment findings were in contradiction to those of Dr. Corkill, that Dr. Corkill's assessment reflected "tolerance limits as stated by [plaintiff]," and that Dr. Corkill's opinion was not supported by his exam findings. (AT 197.) The non-examining doctor also noted that Dr. Corkill's exam overall showed "mild findings" and that plaintiff had a normal gait and no atrophy. (Id.)

Subsequent to these assessments, plaintiff underwent examinations by other treating providers. (See AT 216-54.) During a neurological examination conducted on April 10, 2009, a neurologist, Dr. Harvinder Birk, concluded that plaintiff had "right lumbosacral radiculopathy[5] at the S1 level" of his spine. (AT 217.) In examining plaintiff, Family Nurse

---

[5] Radiculopathy or radicular pain "is a type of pain that radiates into the lower extremity directly along the course of a spinal nerve root. Radicular pain is caused by compression, inflammation and/or injury to a spinal nerve root arising from common conditions including herniated disc, foraminal stenosis and peridural fibrosis. Leg pain can be accompanied by numbness and tingling, muscle weakness, and loss of reflexes. The most common symptom of radicular pain is usually called sciatica or sometimes radiculopathy, which is pain that radiates

Practitioner ("FNP") Dawson at the Shasta Community Health Center noted that, although plaintiff showed discomfort in standing up from a sitting position, he had a normal gait and experienced no pain when undergoing a straight leg test. (AT 220.) During the course of these examinations, FNP Dawson also noted that plaintiff had begun losing weight, dropping from 306 pounds at the outset of the series of examinations on February 5, 2009, to 279 pounds by June 17, 2009. (AT 220, 250.) The most recent examination in the record by Dr. Kimberly Page showed that plaintiff experienced pain with leaning tests, but that there were no abnormalities in plaintiff's spine, and that plaintiff had a "mildly antalgic gait" and a "normal cervical range of motion." (AT 257.) X-rays of plaintiff's back taken in June of 2009 showed that his back had a "reasonable range of motion" and that although there were "degenerative changes at the L5-S1 disk space," the vertebral bodies and disk space were otherwise unremarkable. (AT 224.)

The ALJ made his determinations based on the above-stated objective medical findings; he reconciled the contradictory opinions of Dr. Corkill and the non-examining physician, and determined that the non-examining physician's opinion was more consistent with the clinical and diagnostic findings from plaintiff's treating sources, and thus entitled to more weight. As required, the ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence (AT 69-71), stated his interpretation of the evidence, and made findings regarding Dr. Corkill's assessment in light of the evidence in the record. Under the deferential standard of review, it cannot be said that the ALJ's analysis and conclusions drawn from the available evidence were erroneous or unsupported by substantial evidence.

The undersigned next addresses the remaining reasons that the ALJ gave for assigning Dr. Corkill's opinion minimal weight. These remaining reasons are that plaintiff

---

along the sciatic nerve down the back of the thigh and sometimes into the calf and foot. Radicular pain can be effectively treated conservatively (non-surgically) with physical therapy, medications and epidural injections. If conservative treatments fail, decompressive surgery, such as a laminectomy or discectomy, may alleviate radicular pain." See *Radicular Pain and Radiculopathy Definition*, http://www.spine-health.com/glossary/r/radicular-pain-and-radiculopathy.

indicated at the hearing that he could perform multiple daily activities, indicated that he "drew unemployment benefits which indicated the ability to work," and lost weight through exercise and dieting. (AT 71.) These reasons, alone, may not necessarily constitute a legitimate reason for discounting Dr. Corkill's opinion. However, the fact that plaintiff lost weight during the period after he was examined by Dr. Corkill lends some credence to the ALJ's determination that Dr. Corkill's opinion was contrary to the medical evidence in the record. In Dr. Corkill's opinion, plaintiff could only walk about four blocks before needing rest. (AT 190.) The fact that plaintiff was able to lose a substantial amount of weight through walking on a daily basis after Dr. Corkill's assessment indicates that plaintiff's physical capacity was beyond the limitations set out in Dr. Corkill's assessment, thus bolstering the ALJ's decision to give Dr. Corkill's opinion minimal weight.

In light of the above, the undersigned concludes that the ALJ provided specific and legitimate reasons for discounting Dr. Corkill's functional assessment.

2.   <u>The ALJ's Consideration of the Treating Physician's Opinion</u>

Plaintiff also argues in his motion for summary judgment that the ALJ improperly discounted the medical opinion of plaintiff's treating physician, although plaintiff failed to identify any particular physician or the content of the purported opinion. (Dkt. No. 17 at 4.) In his response to defendant's cross-motion for summary judgment, plaintiff alleges that the ALJ gave no weight to the opinions of Dr. Birk, FNP Dawson, or Dr. Page. (Dkt. No. 19 at 3.) However, aside from the opinions of Dr. Corkill and the non-examining physician, no other physician in the record provided an opinion regarding plaintiff's physical capabilities.

Title 20 C.F.R. § 404.1527(a)(2) defines "medical opinion" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." As the Commissioner points out in a footnote, the record does not contain

11

functional assessments by any of plaintiff's treating sources. (Dkt. No. 18 at 8 n.1.) Dr. Page indicated during his examination that plaintiff's "disability status is being determined by his primary treating physician, Dr. Heard." (AT 257.) However, there is nothing in the record indicating that Dr. Heard ever performed a functional assessment. As discussed above, the ALJ examined the other medical findings in the record and found that they were in conformity with the functional assessment made by the non-examining physician and largely contrary to Dr. Corkill's assessment. This conclusion was supported by substantial evidence.

Plaintiff has the burden of showing that the ALJ erred by not considering the opinions of treating physicians. See Burch, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis."). Simply put, plaintiff has not pointed to any evidence in the record demonstrating that the ALJ disregarded a medical opinion given by plaintiff's treating providers.

B.   The ALJ's Consideration of Plaintiff's Obesity

Next, plaintiff argues that the ALJ failed to follow SSR[6] 02-1p, which governs the consideration of a claimant's obesity. (Dkt. No. 17 at 5.) Additionally, he argues that the ALJ derogated from the treating physician's records when finding at step four "that [the] treating records did not contain evidence that [plaintiff's] obesity was causing any significant musculoskeletal problems." (Id.) Plaintiff is correct that obesity must be considered throughout the sequential evaluation process, including when determining an individual's RFC. SSR 02-1p, at **3, 6. "The combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p, at *6. The Ninth Circuit has held that, pursuant to SSR 02-1p, the ALJ must consider obesity in determining the RFC based on the information in the case record. Burch, 400 F.3d at 683. For the reasons stated below, the undersigned finds that the

---

[6] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224 (citation omitted).

ALJ properly considered plaintiff's obesity in determining plaintiff's RFC.

As a preliminary matter, plaintiff points to no evidence supporting his contention that his obesity caused any functional limitations beyond those considered by the ALJ. Plaintiff does not indicate how the ALJ's consideration of plaintiff's obesity was contrary to SSR 02-1p or the treating physician's records. See Burch, 400 F.3d at 684 (holding that the ALJ properly considered the claimant's obesity where the claimant failed to set forth any additional functional limitations caused by his obesity that were not assessed by the ALJ or indicated in the record). Therefore, plaintiff has not shown that the ALJ improperly considered, or failed to consider, plaintiff's obesity.

Moreover, substantial evidence supports the ALJ's assessment of plaintiff's obesity and RFC. As stated above, the ALJ thoroughly discussed the evidence regarding plaintiff's functional limitations when he determined plaintiff's RFC. (AT 69-71.) The ALJ acknowledged that the medical record contained observations regarding plaintiff's obesity. (AT 71.) In particular, during an examination on February 5, 2009, FNP Dawson noted that plaintiff was obese, weighing 306 pounds, and recommended that plaintiff lose weight. (AT 250.) During a later examination, on June 17, 2009, FNP Dawson noted that plaintiff had lost weight, his weight having dropped to 279 pounds. (AT 220.) The ALJ incorporated this weight change into his assessment, stating that the "treating records indicated the claimant had lost weight with dietary modification and walking daily." (AT 71; see also AT 70.) Additionally, the ALJ considered plaintiff's obesity as one of the severe impairments found at step two; however, the ALJ also found that the fact that plaintiff had lost weight during the relevant period was one reason why Dr. Corkill's more severe functional assessment should be discredited in favor of the non-examining physician's assessment. (AT 67, 71.) The ALJ further found that the treating records did not contain evidence that plaintiff' obesity was causing any significant musculoskeletal problems. (AT 71.) Thus, the ALJ properly considered plaintiff's obesity in his assessment and based his findings on substantial evidence in the record.

C.   The ALJ's Use of the VE's Testimony at Step Four

Finally, plaintiff makes three arguments regarding the ALJ's use of the VE's testimony. First, plaintiff argues that the ALJ failed to have the VE testify as to whether plaintiff could perform other jobs in the national economy in light of his impairments. (Dkt. No. 17 at 4.) Second, he argues that the ALJ erred by not posing any hypotheticals to the VE supporting the ALJ's determination that plaintiff could perform past relevant work. (Id. at 6.) Additionally, plaintiff argues that the ALJ misstated the VE's testimony. (Id. at 7.) The undersigned finds all of these arguments unpersuasive.

First, plaintiff's argument that the ALJ erred by failing to have the VE testify about other jobs in the national economy lacks merit because the ALJ was not required to reach step five of the analysis. When an ALJ determines at step four that the claimant has the RFC to perform past work, the ALJ does "not consider [the claimant's] vocational factors of age, education, and work experience or whether [the claimant's] past relevant work exists in significant numbers in the national economy" because the claimant is deemed not disabled; there is no need to go on to step five of the analysis. 20 C.F.R. § 404.1560(b)(3); 20 C.F.R. 404.1520(f); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (holding that the ALJ's determination that the claimant could perform past work made it unnecessary for the ALJ to call a vocational expert at step five).

Second, contrary to plaintiff's contention, the ALJ did not need to question the VE as to whether plaintiff could perform his past relevant work in light of the ALJ's RFC finding. Although an ALJ may use a vocational expert at step four, it is not required. See 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity" (emphasis added)). Case law is in accord that at step four an ALJ's determination that a claimant can perform past work need not be supported by the testimony of a vocational expert. See Mathews v. Shalala, 10 F.3d 678, 681

(9th Cir. 1993) (holding that because the claimant "failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]" and "[t]he vocational expert's testimony was thus useful, but not required"). The ALJ found that plaintiff's RFC permitted him to "perform a full range of medium work." (AT 72.) As stated above, this determination was based on substantial evidence. During the hearing, the VE testified that all of plaintiff's past relevant jobs were categorized as either "sedentary" or "light" work under the applicable sections of the Dictionary of Occupational Titles (DOT).[7] (AT 55.) If a person can perform "medium work," then he or she can also perform work categorized as "sedentary" or "light." 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."). Because the ALJ found that

---

[7] The DOT defines sedentary work as requiring a worker to:

> Exert[ ] up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work invoves [sic] sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occsasionally [sic] and all other sedentary criteria are met.

DOT 214.362-042, 1991 WL 67176.

The DOT defines light work as requiring a worker to:

> Exert[ ] up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT 312.474-010, 1991 WL 672698.

plaintiff could perform the full range of jobs classified under "medium work" (AT 72), it necessarily follows that plaintiff was also capable of performing his past relevant work, which, as the VE stated in her testimony, only required "sedentary" or "light" exertion. Accordingly, there was no need for the ALJ to pose hypothetical questions to the VE to determine whether plaintiff was capable of performing his past relevant work.

Third, plaintiff's claim that the ALJ mischaracterized the VE's testimony also lacks merit. In his decision, the ALJ stated that the "vocational expert testified that the claimant could perform his past relevant work . . .." (AT 72.) Although the VE never actually made this statement (see AT 55), the conclusion can be reasonably inferred from the VE's testimony for the reasons discussed above. Any error arising from the ALJ's misstatement does not constitute reversible error because it is "nonprejudicial to the claimant" and "irrelevant to the ALJ's ultimate disability conclusion." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

Finally, for the first time in his reply brief, plaintiff argues that the ALJ erred at step three because he allegedly failed to consider evidence that plaintiff may meet Listing 1.04A (disorders of the spine). (Dkt. No. 19 at 3.) Plaintiff argues that, as a result, the case should be remanded for a "thorough Step 3 analysis." (Id.) However, plaintiff failed to raise such an argument in his motion for summary judgment. Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1202 (9th Cir. 2001) (noting that a district court has discretion to consider issues initially raised in a reply brief). Even if the court were inclined to consider the newly-raised argument, plaintiff offers no actual theory or analysis, beyond a mere conclusory assertion, of how he meets or equals Listing 1.04. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (explaining that the claimant must at least offer a theory with some supporting evidence that his impairments equal a listed impairment). In light of these deficiencies, and because defendant has not had an opportunity to respond to plaintiff's conclusory contention, the court declines to consider it.

////

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 17) is denied.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 18) is granted.

3. The Clerk of Court is directed to enter judgment in favor of the Commissioner.

IT IS SO ORDERED.

DATED: September 17, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE